Justice ALITO delivered the opinion of the Court.
A veteran whose claim for federal benefits is denied by the Board of Veterans’ Appeals may appeal to the United States Court of Appeals for Veterans Claims (Veterans Court). To do so, the veteran must file a notice of appeal with the Veterans Court within 120 days after the date when the Board’s final decision is properly mailed. 38 U.S.C. § 7266(a). This case presents the question whether a veteran’s failure to file a notice of appeal within the 120-day period should be regarded as having “jurisdictional” consequences. We hold that it should not.
I
A
The Department of Veterans Affairs (VA) administers the federal program that provides benefits to veterans with service-connected disabilities. The VA has a two-step process for the adjudication of these claims. First, a VA regional office receives and processes veterans’ claims and makes an initial decision on whether to grant or deny benefits. Second, if a veteran is dissatisfied with the regional office’s decision, the veteran may obtain de novo review by the Board of Veterans’ Appeals. The Board is a body within the VA that makes the agency’s final decision in cases appealed to it. §§ 7101, 7104(a).
The VA’s adjudicatory “process is designed to function throughout with a high degree of informality and solicitude for the claimant.” Walters v. National Assn. of Radiation Survivors, 473 U.S. 305, 311, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). A veteran faces no time limit for filing a claim, and once a claim is filed, the VA’s process for adjudicating it at the regional office and the Board is ex parte and nonad-versarial, 38 CFR §§ 3.103(a), 20.700(c) (2010). The VA has a statutory duty to assist veterans in developing the evidence necessary to substantiate their claims. 38 U.S.C. §§ 5103(a) (2006 ed., Supp. III), *1201 5103A (2006 ed.). And when evaluating claims, the VA must give veterans the “benefit of the doubt” whenever positive and negative evidence on a material issue is roughly equal. § 5107(b). If a regional office denies a claim, the veteran has a generous one-year time limit to initiate an appeal to the Board. § 7105(b)(1); 38 CFR § 20.302(a). A veteran may also reopen a previously denied claim at any time by presenting “new and material evidence,” 38 U.S.C. § 5108, and decisions by a regional office or the Board are subject to challenge at any time based on “clear and unmistakable error,” §§ 5109A, 7111.
Before 1988, a veteran whose claim was rejected by the VA was generally unable to obtain further review. 38 U.S.C. § 211(a) (1988 ed.).[1] But the Veterans’ Judicial Review Act (VJRA), 102 Stat. 4105 (codified, as amended, in various sections of 38 U.S.C. (2006 ed. and Supp. Ill)), created the Veterans Court, an Article I tribunal, and authorized that court to review Board decisions adverse to veterans.[2] §§ 7251, 7252(a) (2006 ed.). While proceedings before the Veterans Court are adversarial, see § 7263, veterans have a remarkable record of success before that tribunal. Statistics compiled by the Veterans Court show that in the last decade, the court ordered some form of relief in around 79 percent of its “merits decisions.” [3]
Review of Veterans Court decisions on certain issues of law is available in the United States Court of Appeals for the Federal Circuit. § 7292. Federal Circuit decisions may in turn be reviewed by this Court by writ of certiorari.
B
David Henderson served in the military during the Korean War. In 1992, the VA gave Henderson a 100-percent disability rating for paranoid schizophrenia, and in 2001, he filed a claim for supplemental benefits based on his need for in-home care. After a VA regional office and the Board denied his claim, he filed a notice of appeal with the Veterans Court, but he missed the 120-day filing deadline by 15 days. See § 7266(a).
The Veterans Court initially dismissed Henderson’s appeal as untimely. It concluded that Henderson was not entitled to equitable tolling of the deadline because he had not shown that his illness had caused his tardy filing. Later, the court granted Henderson’s motion for reconsideration, revoked the dismissal, and set the case for argument. While Henderson’s appeal was pending, however, we decided Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). In Bowles, we held that the statutory limitation on the length of an extension of the time to file a notice of appeal in an ordinary civil case, 28 U.S.C. § 2107(c) (2006 ed., Supp. III), is “jurisdictional,” and we therefore held that a party’s failure to file a notice of appeal *1202 within that period could not be excused based on equitable factors, or on the opposing party’s forfeiture or waiver of any objection to the late filing. Bowles, supra, at 213-214, 127 S.Ct. 2360.
After we announced our decision in Bowles, the Veterans Court directed the parties to brief that decision’s effect on prior Federal Circuit precedent that allowed the equitable tolling of the 120-day deadline for filing a notice of appeal in the Veterans Court. A divided panel of the Veterans Court concluded that Bowles compelled jurisdictional treatment of the 120-day deadline and dismissed Henderson’s untimely appeal for lack of jurisdiction. Henderson v. Peake, 22 Vet.App. 217 (2008).
Henderson then appealed to the Federal Circuit, and a divided en banc court affirmed. 589 F.3d 1201 (2009). We granted certiorari. 561 U.S. -, 130 S.Ct. 3502, 177 L.Ed.2d 1089 (2010).
II
In this case, as in others that have come before us in recent years, we must decide whether a procedural rule is “jurisdictional.” See Reed Elsevier, Inc. v. Muchnick, 559 U.S.-, 130 S.Ct. 1237, 176 L.Ed.2d 17 (2010); Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region, 558 U.S. -, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009); Bowles, supra; Arbaugh v. Y & H Corp., 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam); Scarborough v. Principi, 541 U.S. 401, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004); Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). This question is not merely semantic but one of considerable practical importance for judges and litigants. Branding a rule as going to a court’s subject-matter jurisdiction alters the normal operation of our adversarial system. Under that system, courts are generally limited to addressing the claims and arguments advanced by the parties. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 356-357, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. See Arbaugh, supra, at 514, 126 S.Ct. 1235.
Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. For purposes of efficiency and fairness, our legal system is replete with rules requiring that certain matters be raised at particular times. See Sanchez-Llamas, supra, at 356-357, 126 S.Ct. 2669. Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. Arbaugh, 546 U.S., at 508, 126 S.Ct. 1235. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court’s jurisdiction. Ibid. And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted.
Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. We have urged that a rule should not be referred to as jurisdictional unless it governs a court’s adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Reed Elsevier, supra, at -, 130 S.Ct., at 1243-1244; Kontrick, supra, at *1203 455, 124 S.Ct. 906. Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand. See Union Pacific, 558 U.S., at -, 130 S.Ct., at 596.
Among the types of rules that should not be described as jurisdictional are what we have called “claim-processing rules.” These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times. Id., at -, 130 S.Ct., at 597; Eberhart, supra, at 19, 126 S.Ct. 403; Scarborough, supra, at 413-414, 124 S.Ct. 1856; Kontrick, supra, at 455-456, 124 S.Ct. 906. Filing deadlines, such as the 120-day filing deadline at issue here, are quintessential claim-processing rules. Accordingly, if we were simply to apply the strict definition of jurisdiction that we have recommended in our recent cases, we would reverse the decision of the Federal Circuit, and this opinion could end at this point.
Unfortunately, the question before us is not quite that simple because Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule. See Bowles, supra, at 212-213, 127 S.Ct. 2360. The question here, therefore, is whether Congress mandated that the 120-day deadline be “jurisdictional.” In Arbaugh, we applied a “readily administrable bright line” rule for deciding such questions. 546 U.S., at 515-516, 126 S.Ct. 1235. Under Arbaugh, we look to see if there is any “clear” indication that Congress wanted the rule to be “jurisdictional.” Ibid. This approach is suited to capture Congress’ likely intent and also provides helpful guidance for courts and litigants, who will be “duly instructed” regarding a rule’s nature. See id., at 514-515, and n. 11, 126 S.Ct. 1235.
Congress, of course, need not use magic words in order to speak clearly on this point. “[Cjontext, including this Court’s interpretation of similar provisions in many years past, is relevant.” Reed Elsevier, supra, at -, 130 S.Ct., at 1248. When “a long line of this Court’s decisions left undisturbed by Congress,” Union Pacific, supra, at -, 130 S.Ct., at 597, has treated a similar requirement as “jurisdictional,” we will presume that Congress intended to follow that course. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-134, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).
Ill
With these principles in mind, we consider whether Congress clearly prescribed that the deadline for filing a notice of appeal with the Veterans Court should be “jurisdictional.”
A
Contending that the 120-day filing deadline was meant to be jurisdictional, the Government maintains that Bowles is controlling. The Government reads Bowles to mean that all statutory deadlines for taking appeals in civil cases are jurisdictional. Since § 7266(a) establishes a statutory deadline for taking an appeal in a civil case, the Government reasons, that deadline is jurisdictional.
We reject the major premise of this syllogism. Bowles did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional. Instead, Bowles concerned an appeal from one court to another court. The “century’s worth of precedent and practice in American courts” on which Bowles relied involved appeals of that type. See 551 U.S., at 209-210, and n. 2, 127 S.Ct. 2360.
Contending that Bowles’ reasoning extends to the judicial review of administra *1204 tive decisions, the Government relies on Stone v. INS, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). There, without elaboration, we described as “ ‘mandatory and jurisdictional’ ” the deadline for seeking review in the courts of appeals of final removal orders of the Board of Immigration Appeals. Id., at 405, 115 S.Ct. 1537 (quoting Missouri v. Jenkins, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)). The Government also notes that lower court decisions have uniformly held that the Hobbs Act’s 60-day time limit for filing a petition for review of certain final agency decisions, 28 U.S.C. § 2344, is jurisdictional. Brief for United States 18.
Petitioner correctly observes, however, that Veterans Court review of a VA decision denying benefits differs in many respects from court of appeals review of an agency decision under the Hobbs Act. Cf. Shinseki v. Sanders, 556 U.S.-,-, 129 S.Ct. 1696, 1707, 173 L.Ed.2d 532 (2009) (“Congress has made clear that the VA is not an ordinary agency”). And there is force to petitioner’s argument that a more appropriate analog is judicial review of an administrative decision denying Social Security disability benefits. The Social Security disability benefits program, like the veterans benefits program, is “unusually protective” of claimants, Heckler v. Day, 467 U.S. 104, 106-107, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984). See also Sims v. Apfel, 530 U.S. 103, 110-112, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (plurality opinion). Indeed, the Government acknowledges that “the Social Security and veterans-benefit review mechanisms share significant common attributes.” Brief for United States 16. And long before Congress enacted the VJRA, we held that the deadline for obtaining review of Social Security benefits decisions in district court, 42 U.S.C. § 405(g), is not jurisdictional. Bowen v. City of New York, 476 U.S. 467, 478, and n. 10, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); Mathews v. Eldridge, 424 U.S. 319, 328, n. 9, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Weinberger v. Salfi, 422 U.S. 749, 763-764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
In the end, however, none of the precedents cited by the parties controls our decision here. All of those cases involved review by Article III courts. This case, by contrast, involves review by an Article I tribunal as part of a unique administrative scheme. Instead of applying a categorical rule regarding review of administrative decisions, we attempt to ascertain Congress’ intent regarding the particular type of review at issue in this case.
B
Several factors convince us that the 120-day deadline for seeking Veterans Court review was not meant to have jurisdictional attributes.
The terms of the provision setting that deadline, 38 U.S.C. § 7266(a), do not suggest, much less provide clear evidence, that the provision was meant to carry jurisdictional consequences. Section 7266(a) provides:
“In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans’ Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.”
This provision “does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court],” Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). If Congress had wanted the 120-day time to be treated as jurisdictional, it could have cast that provision in language *1205 like that in the provision of the VJRA that governs Federal Circuit review of decisions of the Veterans Court. This latter provision states that Federal Circuit review must be obtained “within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts.” § 7292(a). Because the time for taking an appeal from a district court to a court of appeals in a civil case has long been understood to be jurisdictional, see Bowles, supra, at 209-210, and n. 2, 127 S.Ct. 2360, this language clearly signals an intent to impose the same restrictions on appeals from the Veterans Court to the Federal Circuit. But the 120-day limit at issue in this case is not framed in comparable terms. It is true that § 7266 is cast in mandatory language, but we have rejected the notion that “all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional.” Union Pacific, 558 U.S., at -, 130 S.Ct., at 596 (quoting Arbaugh, 546 U.S., at 510, 126 S.Ct. 1235; internal quotation marks omitted). Thus, the language of § 7266 provides no clear indication that Congress wanted that provision to be treated as having jurisdictional attributes.
Nor does § 7266’s placement within the VJRA provide such an indication. Congress placed § 7266, numbered § 4066 in the enacting legislation, in a subchapter entitled “Procedure.” See VJRA, § 301, 102 Stat. 4113, 4115-4116. That placement suggests Congress regarded the 120-day limit as a claim-processing rule. Cf. INS v. National Center for Immigrants’ Rights, Inc., 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991) (“[T]he title of a statute or section can aid in resolving an ambiguity in the legislation’s text”). Congress elected not to place the 120-day limit in the VJRA subchapter entitled “Organization and Jurisdiction.” See 102 Stat. 4113-4115.
Within that subchapter, a separate provision, captioned “Jurisdiction; finality of decisions,” prescribes the jurisdiction of the Veterans Court. Id,., at 4113-4114. Subsection (a) of that provision, numbered § 4052 in the enacting legislation, grants the Veterans Court “exclusive jurisdiction to review decisions of the Board of Veterans’ Appeals” and the “power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.” Id., at 4113. It also prohibits the court from hearing appeals by the VA Secretary. Subsection (b) limits the court’s review to “the record of proceedings before the [VA],” specifies the scope of that review, and precludes review of the VA’s disability ratings schedule. Ibid. Nothing in this provision or in the “Organization and Jurisdiction” subchapter addresses the time for seeking Veterans Court review.
While the terms and placement of § 7266 provide some indication of Congress’ intent, what is most telling here are the singular characteristics of the review scheme that Congress created for the adjudication of veterans’ benefits claims. “The solicitude of Congress for veterans is of long standing.” United States v. Oregon, 366 U.S. 643, 647, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); see also Sanders, 556 U.S., at -, 129 S.Ct., at 1707-1708. And that solicitude is plainly reflected in the VJRA, as well as in subsequent laws that “place a thumb on the scale in the veteran’s favor in the course of administrative and judicial review of VA decisions,” id., at -, 129 S.Ct., at 1709 (Souter, J., dissenting). See, e.g., Veterans Claims Assistance Act of 2000, 114 Stat.2096; Act of Nov. 21, 1997, 111 Stat. 2271; VJRA, § 103,102 Stat. 4106-4107.
The contrast between ordinary civil litigation — which provided the context of our decision in Bowles — and the system that Congress created for the adjudication of *1206 veterans’ benefits claims could hardly be more dramatic. In ordinary civil litigation, plaintiffs must generally commence their suits within the time specified in a statute of limitations, see 28 U.S.C. § 1658, and the litigation is adversarial. Plaintiffs must gather the evidence that supports their claims and generally bear the burden of production and persuasion. Both parties may appeal an adverse trial-court decision, see § 1291, and a final judgment may be reopened only in narrow circumstances. See Fed. Rule Civ. Proc. 60.
By contrast, a veteran seeking benefits need not file an initial claim within any fixed period after the alleged onset of disability or separation from service. When a claim is filed, proceedings before the VA are informal and nonadversarial. The VA is charged with the responsibility of assisting veterans in developing evidence that supports their claims, and in evaluating that evidence, the VA must give the veteran the benefit of any doubt. If a veteran is unsuccessful before a regional office, the veteran may obtain de novo review before the Board, and if the veteran loses before the Board, the veteran can obtain further review in the Veterans Court. A Board decision in the veteran’s favor, on the other hand, is final. And even if a veteran is denied benefits after exhausting all avenues of administrative and judicial review, a veteran may reopen a claim simply by presenting “new and material evidence.” Rigid jurisdictional treatment of the 120-day period for filing a notice of appeal in the Veterans Court would clash sharply with this scheme.
We have long applied “the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries’ favor.” King v. St. Vincent’s Hospital, 502 U.S. 215, 220-221, n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); see also Coffy v. Republic Steel Corp., 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Particularly in light this canon, we do not find any clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag.
The Government argues that there is no reason to think that jurisdictionally time-limited review is inconsistent with a pro-veteran administrative scheme because, prior to the enactment of the VJRA in 1988, VA decisions were not subject to any further review at all. Brief for United States 29. The provision at issue here, however, was enacted as part of the VJRA, and that legislation was decidedly favorable to veterans. Accordingly, the review opportunities available to veterans before the VJRA was enacted are of little help in interpreting 38 U.S.C. § 7266(a).
IV
We hold that the deadline for filing a notice of appeal with the Veterans Court does not have jurisdictional attributes. The 120-day limit is nevertheless an important procedural rule. Whether this case falls within any exception to the rule is a question to be considered on remand.[4]
The judgment of the United States Court of Appeals for the Federal Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

*1207 Justice KAGAN took no part in the consideration or decision of this case.

. Section 211(a) did not foreclose judicial review of constitutional challenges to veterans' benefits legislation, Johnson v. Robison, 415 U.S. 361, 366-374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), or of challenges to VA benefits regulations based on later-in-time statutes that the VA did not administer exclusively, Traynor v. Turnage, 485 U.S. 535, 541-545, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988).

. When such an appeal is taken, the Veterans Court's scope of review, § 7261, is similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706.

.See United States Court of Appeals for Veterans Claims, Annual Reports 2000-2009, http://uscourts.cavc.gov/documents/AnnuaL Report- FY_2009_October_l_2008_to_Sep-tember_30_2009.pdf (as visited Feb. 25, 2011, and available in Clerk of Court's case file).

. The parties have not asked us to address whether the 120-day deadline in 38 U.S.C. § 7266(a) is subject to equitable tolling, nor has the Government disputed that the deadline is subject to equitable tolling if it is not jurisdictional. See Brief for Petitioner 18. Accordingly, we express no view on this question.